Good morning, Your Honors. My name is Pamela McKay. I represent Evanston Insurance Company. I'm having trouble hearing you. Could you speak louder into the microphone? Absolutely. May it please the Court. Evanston Insurance Company is here on the District Court granting a motion for summary, cross motions for summary judgment, enforcing another insurance clause to both policies, which are commercial general liability policies, and finding that the additional insured endorsement in favor of Evanston's named insured provides coverage for an underlying lawsuit. So we have Evanston's main appeal, and then we have the cross appeal by Everest. I'm here to address both. Evanston's other insurance clause applies to the very situation at issue in this case, which is that its named insured, a property owner, hired a vendor, in this case a landscaper, to perform services at an apartment complex. As part of that business agreement, Evanston's named insured required its subcontractor, Everest Insured, to provide additional insured coverage to Evanston's named insured, La Villa Estates. Everest's named insured is triangle landscaping. To reflect this agreement, Everest's named insured had Evanston's named insured added to its policy as an additional insured. So Everest's policy also had another insured clause, which, if anything, is even broader than the one in Evanston's policy. And the district court says, okay, we'll just split the difference. They cancel each other out. We'll just follow DART and have you pay both policies, both insurance companies pay. So what was wrong with that as a way of saying you're both primary insurers, you both have the same clauses, just split the difference? Thank you, Your Honor. The reason that Evanston believes that is an erroneous decision is because the Everest insurance policy was specifically written as an endorsement. It's not part of a form policy. And the specific language that Everest drafted says that we will be excess insurance to you, the named insured, when you have other insurance available, including additional insured coverage. So in this instance, a plain ---- The named insured? I thought your argument was that because they said the insured, that somehow that limited the coverage. Correct, Your Honor. The Everest policy, under which La Villa states obtained additional insured coverage, states that it is excess under certain circumstances that relate only to the insured. And as I stated in our brief, the insured, that particular article, definitely describes who that exclusionary language applies to. And as I said in my brief, there are several cases that agree with that. The insured is the named insured. It's not an insured, which is, in this case, an additional insured or my client's named insured. There are several cases cited in my brief, the Lynette C. case, the Nautilus case, the Peerless case, and actually a case from this specific district, the Allstate v. Foster case, that found specifically that when an insurance policy specifically uses an article to describe a subject, as in this case insurance, the insured is just that, the named insured, or anyone who qualifies as the insured, but not an insured, such as an additional insured. And because of that discrepancy, the Court is required, which we believe the district court did not, is to follow the plain language of the policy, which states that in these circumstances, the other insurance clause does not apply to an additional insured. So explain to me how that would work. You're looking at paragraph 4, section 4, which says, if other valid and collectible insurance is available to the insured for a loss we cover, our obligation is limited. Is that what you're looking at? For the Everest policy, yes. It's under, the record is ER Volume 2, A0110 to A0111, paragraph 2, and then also A0143. As Your Honors will notice that, the Everest policy specifically drafted this as a separate endorsement. So it deliberately decided what language to use. And in this case, it says be insured. So if other valid and collectible insurance is available, we should read that according to you. If other valid and collectible insurance is available to Triangle for a loss we cover, then there is, then the insurance is excess. Is that what you're saying? Correct. But my client's insured is not Triangle. My client's insured is Triangle's client who requested additional insured coverage under Triangle's Everest policy. In that case, in conjunction with the language in the Evanston policy issued to my client, which says that when you have additional insured coverage, our policy is excess. And this pretty much follows the Travelers versus Hartford case, which says basically when you have a business transaction where one business contracts with a vendor and says part of our business agreement is that my insurance is not going to apply if we get sued due to liability arising from your work, you are going to be my primary carrier and my insurance will be excess. And that's specifically what's happened in this case. And as the court in that case said, basically there's no reason to disregard the clear language of the policy because equity doesn't come into play. There was a bargain between my client's named insured and Everest named insured that in order for Triangle Landscape to obtain the business of La Villa Estates, La Villa Estates had to obtain additional insured status under the Everest policy, which it did. And in fact, when both our clients' named insureds got sued in the underlying action, Evanston initially accepted its named insured's tender, tendered it to Everest because La Villa Estates was an additional insured. Everest accepted that tender, substituted in as defense counsel, and Evanston withdrew from the defense defense. So let me just make sure I understand. If everywhere in the insurance agreement it speaks of liability to the insured, we should read in triangle, then why is La Villa covered at all? Because the liability, the insuring agreement, it speaks of liability to the insured, which under your So I don't know that I'm following your argument. Okay. Everywhere we see the insured, we should read in triangle because then we've seen that La Villa is not covered at all. Thank you for the question, Your Honor. According to the Nevada Supreme Court decision of Federal Insurance Company versus Acceptance, the additional insured endorsement determines the rights of the additional insured. So are you saying that only in the endorsement do we read the insured to be in triangle? And everywhere else the insured shows up in the policy, we read it differently? No. But when the insured is implicated in an additional insured situation, as in this case, then you have to read the policy in the manner in which it was written, specifically by Everest, by the endorsement to revise the other insurance clause in its policy. So is that, so when you said no to my question about whether we read the insured to mean triangle only in the endorsement, are you actually saying yes, so that when we read the endorsement, we read the language in the endorsement differently than we read it in the rest of the policy? No. The actual additional insured endorsement does not use the word the insured. What it does use is comparable language of your, which is defined in the policy as the named insured. And basically Everest agreed to provide additional insured status and coverage to an additional insured. So where are we looking? That would be ER Volume 2, A0110 to A0111. What section? So this is endorsement, additional insured. Who is an insured? The additional insured endorsement owners, lessees, or contractors, scheduled person or organization. Okay. So in that endorsement, there is no the to preface any of the persons identified in that endorsement. It only says that who is an insured is amended to include as an insured the person shown in the schedule, which Triangle Landscape asked Everest to endorse LaVilla Estates as an additional insured, pursuant to its business agreement. And then the additional insured endorsement goes on to limit whatever coverage the policy may afford to the additional insured. And that is the, but only with respect to liability arising out of your, which is Triangles, ongoing operations for that insured. If we assume that language is ambiguous, does that mean you lose that the district court was right in splitting the difference? No, because I don't believe that that language is ambiguous. The Nevada Supreme Court has evaluated similar clauses and found that even though it's ambiguous as to what type of negligence may be attributable to the named insured in order to preserve additional insured coverage, actually who qualifies as an insured is not. And that is specifically in this instance when Triangle Landscape asked its insurance company to add LaVilla Estates as an additional insured to the policy, which they did. Because this endorsement says that the person or organization is added by schedule, which means you have to ask for the person or organization to be added. They don't automatically become an insured without a request and approval by the insurance company. So it's Evanston's belief that when you take its other insurance clause, which states that when our named insured, LaVilla Estates, has additional insured coverage, then it is an excess carrier and its policy does not apply. Everest agreed with that when we tendered the underlying lawsuit to them under the additional insured endorsement. They agreed with that position. They took over the defense. I thought they reserved rights. I thought it was with a reservation of rights. They did reserve rights on that issue, but they agreed up front to withdraw, assign their own counsel, and then proceed. So the other insurance clause with respect to the two different policies do not conflict because the other insurance clause to the Everest policy says it's excess to the insured's other insurance. And according to the case law that we cited in our briefs, the insured is not LaVilla Estates. It's Triangle Landscaping and any other person who may qualify as the insured pursuant to its policy. Do you want to save any time for rebuttal, counsel? You're down to 54 seconds. Yes, please. Thank you, Your Honor. Good morning. May it please the Court. My name is John Adams, and I represent Everest National Insurance Company. I, too, wanted to focus on Everest's other insurance amendment because, in large part, this appeal from both parties' perspectives really turns on this Court's interpretation of the word de-insured. And I wanted to clarify where I think the parties agree and where the parties disagree. Both parties approached this before the district court essentially as an all-or-nothing proposition. Either they were fully responsible or we were fully responsible. Justice Sokouda, as you note, it at least perhaps impliedly appears we always say no justice at the 9th Circuit. Just a judge. It appears that Judge Hunt below essentially wanted to say both parties, for equitable reasons, have to share in the defense and the indemnity of the co-insured. My only concern, and under DART, there at least under California authority, is some authority for that. My only concern, though, is that Judge Hunt never really came out and actually said that. What he said was it appeared that both other insurance clauses were similar. They were similar until Everest, my client, added the other insurance amendment. There's nothing similar about those two. In fact, we describe those as theirs being an excess clause and ours being a super excess clause. And we cited some authority that unless the insured is actually prejudiced, which in this case it wasn't, it had two insurance companies that could have defended and indemnified it with ample policy limits from both sides. Why isn't your other insured clause now something like an escape clause, like the other insurance clause, where there's evidence and that, let's see, it evaporates in the presence of other insurance and therefore it's unenforceable? I don't think it is an escape clause for the primary reason, Your Honor, that the other insurance clause also provides that if for whatever reason that other insurance does not provide coverage, we will step in and defend you, but we will reserve our rights to pursue an indemnity action against the other insurance company, which is what exactly was done in this case. But it does say that we will give you primary coverage as a primary insurance clause. Right. But if there's any other insurance out there anywhere, we're excess. I mean, that does seem to be what Edmondson, of course, the California case was concerned about, evaporating in the presence of other insurance. Yeah. To me, it doesn't evaporate because they've guaranteed that they're going to step in. I've always considered, and it's kind of, it's a muddy area, certainly, in insurance law, what constitutes an escape clause versus what constitutes a pure excess clause. To me, an escape clause says if you have any other insurance, whether they're going to cover you or not, you don't get insurance from us, and that's not what Evers did. Well, it does say this insurance is excess over any of the other insurance, whether or not such insurance is stated to be primary excess, catastrophe, umbrella, contingent, or in any other basis. That sounds very broad. Well, it is very broad, and that's our argument, that it really constitutes a super excess clause. And even if it was a super escape clause, even if I granted you as an escape clause, there's certainly authority, and we cited at Couch on Insurance, we cited the Rutter Group in California authority that says as long as the insured is protected, neither side doubts that that is the case. Then courts can honor even an escape clause because that's what the parties contracted. So when I look at the Evanston clause, it does seem to be more specifically focused on those. It evaporates only if there's insurance where the insured is added as an additional insured, which seems more like the language in that Hartford case, also a California case, which specifically said was it enforceable. So it did seem to be more narrow and focused and almost identical to the language in that Hartford case. Well, certainly the courts have said where clauses are more narrow, they're not going to treat them as escape clauses. What wasn't clear to me what Judge Hunt did or didn't do is he didn't really address this other insurance amendment. He seemed to, for whatever reason, how he got there, I don't know, he focused on the parties' equal other insurance clauses. But as far as we're concerned, as long as the insured is adequately protected, the courts in both parties have taken this position below. And as counsel noted, we didn't argue that their other insurance clause was unenforceable as a matter of law because it's in our policy as well. Both insurance companies had standard ISO forms that had the exact same other insurance clause. The only difference is we added the other insurance amendment. Their position, as I think Your Honor picked up, that it necessarily means named insured has absolutely no place in insurance law. The only thing the case has said that they cited, too, was that when you look at the other individual, that's how you read an insurance policy, because if it's particular to an individual, if I'm the additional insured, I am the the. If I am the named insured, I am the the. If I'm the other insured, I am the the. Both Evanston and Everest were very careful with the use of the words the, and, and any in the insurance policies because they have different meanings. And as Judge Ikuta, as you pointed out, on the one hand, if Evanston is taking the position that the necessarily means named insured, then they have no coverage for their named insured, our additional insured, because it would only cover the named insured, which is our named insured triangle landscape. They can't have it both ways. And, in fact, there's to give you a further example, there's an intentional acts exclusion in both policies, which I know this Court is familiar with the cases that talk about. You can't do something intentionally and expect there to be insurance coverage because it's got to be, it's got to be an accident. Well, both policies have an exclusion for intentional acts by the insured. I will guarantee you that Evanston will never, ever take the position that that means only the named insured because that would mean that any additional insured that they would have would necessarily have coverage under their policy, which is nonsensical. So the only, only reasonable reading of our other insurance amendment is that the insured refers to the named insured. And even under that provision, why that's the only reasonable interpretation is because if the insured meant, if they want, for example, they argued below that, well, they could have used the term and. If we would have said and insured has other insurance, this is what the reality would have been for our named insured. Say the additional insured had other insurance, but we didn't as the named insured and we're the ones who paid the big premiums. All of a sudden we wouldn't have insurance because and insured has other insurance, so that just, that clause has wiped ourselves out and that's a nonsensical reading. The only way to read the insurance policy is the means the particular insured, the one who is seeking coverage, and as a result, that is consistent throughout the policy. It doesn't mean named insured. It could mean named insured, but it could mean any insured. Both parties argued below that at least under Nevada law, the way we interpreted Travelers Insurance v. Lopez is that as long as the insured is protected, which the insured was in this case, the Court should honor the terms of the insurance policies clauses. Certainly, Evanston argued that it should adopt its other insurance clause, and we argued that it should adopt our other insurance clause. But by the terms, I mean, I guess that's why the district court was a little frustrated. By their terms, the insured wouldn't, you know, Livia wouldn't have any coverage because they'd both be accepted by the other insurance. It's just that Everest stepped up. The arbitrator dismissed Triangle from the case. Right. So the district court is looking at these and listening to your arguments about why your other insured is broader and listening to their argument, theirs is narrower and says, you know, they cancel each other out. I don't have to parse this out. Why isn't that a reasonable approach? I guess my argument would be that it's — if the Court had articulated that was the approach it was taking, I would have liked to have known, at least as a matter of law, if we're going to get to an abusive discretion standard, that that's the line of reasoning that the district court would have followed. I'm not sure that it is. Certainly, we acknowledged in the reply portion of our brief that there is authority for that in California, but — which is essentially California authority, but there's also authority in California. There's authority in Couch. I think this Court, a few years ago, in 2008, in an unpublished decision, recognized the super escape clause as binding in the State of Washington. I think the better law for Nevada is if — because Nevada seems to be a State that honors contracts and the language of contracts as long as, in an insurance context at least, the insured is not prejudiced, or if it's not an insurance policy, there's no public policy prohibiting the terms of the policy. I think the better law for Nevada, because there is no law right now, is that our — whether it's a super excess, although I think it's just a super escape, I think it's a super excess clause, should be enforced as long as the apartment complex is the additional insured is not prejudiced. But why shouldn't they — why shouldn't the Court also enforce the other contract? I mean, that's the problem that the district court has. Because if they give effect to the language of the Evanston contract, then that would also be appropriate by your — by your argument. Well, we certainly never argued below that the Evanston other insurance clause was not enforceable. Our argument is when you read the clause, it still requires that there be other available insurance. And we cited authority for the proposition that at least in a super excess scenario, that insurance isn't available because, in a sense, it's on a different layer. It's not a true excess policy. We never argue that. It's a primary policy. But in a sense, because of the super excess language, it is on a — it is on a — I'll call it an intermediate level or an in-between level. And that's why I think it should be honored. And, Your Honor, too, it seems to me that even though ours was certainly broader, although we stepped in and provided a defense indemnity, we were the only insurance company to do it for the whole course of the underlying proceedings. If the Court is going to read ours as an escape clause, I think the Court should also read theirs as an escape clause, because, after all, it purports to do the same thing. If you have additional insurance, which they did, then you don't have coverage. So then you could both call them escape clauses. Judge Hunt was right, and we all took home. And certainly if that's the reasoning of the Court, there's authority for that. I think the better authority for Nevada is that you should recognize whatever clause there is, as long as it's not void as a matter of law against public policy or prejudicial to the insured. Briefly, with Your Honor's permission, I'd like to talk about the additional insured endorsement and perhaps give it somewhat of a — of a different nuance as far — as far as our argument is concerned. No one disputes that the sprinkler is what caused the water to go on the sidewalk, harden, and cause the slip and fall to the plaintiff below. The issue, though, is was there a minimal causal connection. Judge Hunt thought there was a minimal causal connection because, essentially, without the water, you don't get the ice. But I think essentially what he was doing, although he certainly didn't articulate that in the — in the decision below, he was adopting a but-for test. And the decisions, I think, are clear in California and — and in most, if not all, of the jurisdictions that I've found outside of Nevada and California that the proper test for minimal connection in this type of arising out of additional insured endorsement needs to be somewhere between proximate cause and the but-for test. What that exact test is, I haven't found to be totally articulated by any court. But I don't think we have it here because if — if you're finding that there's the proper connection with the landscaping company, well, then if — say this was on a construction site and the landscaper's water went on the subcontractor hardscape sidewalk contractor's sidewalk, well, then why wouldn't there be coverage under the sidewalk contractor or the plumber who put in the main lines? At what point do you stop? It was Triangle's operations, right? I mean, Triangle was — it was their — the water came from their sprinklers, so there was — Correct. There's more of a connection than some of the other cases. Correct. But to me, that's nothing more than a but-for test. But for the fact it came from their — I mean, for example, it can't — certainly it came from their sprinkler. No one could test that. But if it went on grass, ice wouldn't have formed. It took the sidewalk. It took their — ensured not putting the salt down, which was their primary and sole responsibility. The best example that I could come up with in thinking what would be that intermediate requirement would be, say that Triangle Landscape was required to put the salt down. And they did put the salt down. And then maybe somebody came along and they swept it off. Now all of a sudden you have that intervening cause that's closer to the proximate test. But you wouldn't necessarily have liability on the part of Triangle Landscape because of this intervening cause. So you might have something in between proximate cause and the but-for test. That's the best example I could give this Court. And then finally, the one thing that I did want to clarify, counsel indicated that the parties had some sort of agreement where we would provide them with additional insurance. That was certainly the claim made in the third-party complaint filed by their named ensured below. But during the discovery below, all of the contract documents were produced, the pamphlets, the guarantees and so forth. The deposition of Mr. O'Connor, who was the owner of Triangle Landscape, was taken. A couple of depositions from folks from the apartment complex were taken. And there was, from what I can recall, absolutely no evidence or testimony or documentation that said we agreed to provide them with additional insurance. We did, however. Did you wrap that up? Yes. I think the better law for Nevada is that an other insurance clause such as ours, Everest, should be honored because the insured was not prejudiced. If the Court disagrees, then certainly, I think, then it can affirm Judge Hunt's decision that both insurance companies should pay for it. Thank you, counsel. Rebuttal. Thank you, Your Honors. I'll make this brief. I think the better law in Nevada would be to follow the plain language of the policy, which is exactly that the insured is, as this Court has found in the Alstate v. Foster case, means the named insured, not the additional insured because otherwise you're providing illusory coverage. So what do they really bargain for? When you have businesses contracting with each other, it's good public policy to have insurance, but it's also good public policy to allow to spread that risk if necessary. Isn't that what the district court did? It spread the risk between the two companies? Between the two insurance companies, but not between the named insureds to each policy. And our named insured contracted as a business transaction with Everest Named Insured that in order to get their business, that they agreed to provide La Villa Estates with additional insured coverage as part of its business transaction. And that is where really the rub lies is that it has to start from the bottom going up, not between insurance companies, because each named insured got the insurance policies according to the benefit that they wanted. And in this case, the subcontractor agreed to provide additional insurance to one of its vendors. It agreed to provide AI coverage to La Villa Estates. With regard to the causation in the additional insured endorsement, briefly, the Nevada Supreme Court said in federal insurance versus acceptance, no causation is required. In fact, the additional insured can be solely negligent so long as its work is connected to the liability giving rise to the additional insured. And that is exactly what we have. The sprinklers would not have been providing the water placement on the sidewalk if it was not for triangle landscapes. Placement of those irrigation sprinklers in the direction that they fell and in addition to the fact that they were operating properly, they were tasked with that and that's the minimal causation. Thank you, Your Honors. Thank you. Thank you to both counsels. The case is submitted for decision by the court. That concludes our calendar for the day. We are in recess until tomorrow morning.
judges: Rawlinson, Bybee, Ikuta